Our final case for this morning is Carter v. Douma Ms. Cranbule Thank you, Your Honor. And may it please the Court, we are here this morning because during Mr. Carter's trial he was denied the right to confront a key witness against him. His trial counsel did not object to the admission of critical out-of-court statements, and that failure to object denied Mr. Carter his right to effective assistance of counsel. Mr. Carter presented this claim on direct appeal, but the Wisconsin Court of Appeals unreasonably applied, clearly established constitutional law in denying him relief. For these reasons, we ask that you reverse the district court order and direct that Mr. Carter's claim for habeas relief be granted. I'd like to take this time to address two key points. First, the objective unreasonableness of Mr. Carter's trial counsel's performance, and second, the prejudice that resulted from that error. At the outset of Mr. Carter's trial, the Court ruled that a confidential informant would not be allowed to testify because of the State's late disclosure of this witness. Despite this ruling, the prosecutor elicited testimony from Officer Webster that he had interacted with a confidential informant, and indeed that confidential informant had identified Mr. Carter as a drug dealer. Again, the prosecutor argued in closing argument that it was because of this testimony from the out-of-court, excuse me, because of this testimony from the confidential informant that the State had proven intent to distribute. So here's where my problem comes in. I think there certainly are some things that Deputy Webster said that were hearsay. I don't think there's any doubt about that and should have been objected to. But on the prejudice side, which I guess you're coming up to, if this really is all about identifying Mr. Carter as a drug dealer and intent to distribute, I can't get out of my mind the final scene with him leaping off into the river and stuff all over his face and baggies floating down. I mean, I just, I'm having trouble seeing that this wouldn't have been harmless error. I understand, Your Honor. And there's no prejudice. That testimony about the final scene with Mr. Carter, we do not dispute that that testimony does show that Mr. Carter possessed cocaine. And a fair amount of it. Twenty-four of these little baggies floating down the river? Am I right? There were 12 baggies. All right. So a lot of them, though. And I can't even think of the number of cases that we have that suggest that somebody walking around with that many prepackaged doses, whether it's a teener or whether it's some other, whether it's even a tenth of a gram, that's distribution behavior. The problem here, Your Honor, is that those 12 baggies were never tested for the presence of cocaine. Well, why would they be? He had rinsed them out in the water. Well, they could still be tested, Your Honor, for the presence of cocaine. In addition, the fact that the jury was able to conclude that each of those baggies contained a teener of cocaine was in part due to the testimony of Officer Webster. Well, actually, I think it might be helpful if we focused a little more on the details of Webster's testimony, because I certainly understand your hearsay point where Webster says that the CI told him that that's the guy who's the drug dealer. But I have trouble understanding how there's a hearsay problem with Deputy Webster describing what he saw and heard with the telephone call in which the sale was arranged. Your Honor, the testimony wasn't exactly what he saw and heard during the conversation. Deputy Webster testified that he had instructed the confidential informant to order drugs in the quantity of teeners. That's okay, right? That's not hearsay, is it? It is, Your Honor. What? Why? Because it is an out-of-court statement that was then offered for the truth of the matter. No, no, no, no, no, no. He's testifying in court about a verbal act, an instruction, not a statement, right? Well, his verbal act, for that matter. Yeah. Yes, and his verbal act would be admissible if it was offered only to prove Why couldn't he say, I gave this instruction, and the next thing I knew, and he says, and then I directed him to make a telephone call to this individual, and he observes that a telephone call happens. Why is any of that hearsay? I'm not talking about the part where he's repeating what the CI says, but just that a telephone call happens. That's not hearsay, Your Honor. Okay. Nor is it hearsay for him to describe what the CI requested, right? And, Your Honor, in when The CI says, I want so-and-so, is it tweeners? Teeners, Your Honor. Teeners, sorry. Okay. I want, you know, so-and-so, four teeners. That's not hearsay, is it? That testimony never came before the jury, Your Honor. When the prosecutor asked W.D. Webster about this interaction, the sole comment about teeners came from Deputy Webster himself, that he had instructed the confidential informant to order teeners. The rest of the conversation was simply that the questions were along the lines of, and did the Did you hear the request being made by CI, as you had indicated, in order to purchase? Yes. Correct, Your Honor. That's okay, right? Yes. All right. So the key testimony here that really supported the prosecution's argument in closing was that the confidential informant had identified Mr. Carter as a drug dealer. And that testimony, why else would the prosecution have discussed the credibility of the confidential informant and the reason for the confidential informant's absence, but for the fact that the prosecution was using that testimony to support the truth of the matter, that Mr. Carter had possessed this cocaine with the intent to distribute? Well, and I'm with you as far as agreeing with you, since here it is in the record, that the closing argument on behalf of the State does harp on this and maybe shouldn't have done so. But it still leaves me with this broader harmless error. I mean, sometimes harmless error happens when there are bad prosecutorial closing arguments too. And if it's harmless error, then a finding of no prejudice, I think, would have to follow. Well, Your Honor, I would emphasize that the prejudice analysis here is that there has to be a determination that there is a reasonable probability of a different outcome. Mr. Carter doesn't have to show that there absolutely would be a different outcome here. And this testimony about Mr. Carter being a drug dealer, that was something that the jury heard at the outset of Officer Webster's testimony and was able to use that perspective when the rest of the testimony was elicited about the subsequent events that occurred once the officers began following Mr. Carter. The jury had in its mind at that point that Mr. Carter has already been identified as a drug dealer. And so the rest of the testimony that was offered to the jury at that point was viewed through that lens. Why isn't it fair to say, in essence, that Mr. Carter identified himself as a drug dealer when he answered the CI's call, responded after that call, fled from police, and then winds up in the river dumping out all these bags? Your Honor, we didn't hear the other side of the conversation with Mr. Carter. We didn't hear his voice, any sort of statement indicating that he was clearly understanding that, yes, I have, I will be able to give you those teeners, I can do that for you, I can bring those to you. The rest of the actions that Your Honor referred to could also go to possession. Mr. Carter may well have known that he had cocaine on his person, in his vehicle, and because of that he didn't want the officers to locate that upon stopping him. If there are no other questions at this time, I'll reserve my remaining time for rebuttal. That's fine. Ms. Tarver. Good morning. I'm Sandra Tarver, Assistant Attorney General for the State of Wisconsin. I represent the FLE. The Wisconsin Court of Appeals reasonably applied Strickland v. Washington when it rejected Mr. Carter's ineffective assistance of counsel claim. Under both the deficient performance and prejudice prongs, Mr. Carter is not in- I think that's an overstatement. I think there's some real problems with Webster's testimony. Whether they're ultimately prejudicial is another matter, but there's blatant hearsay in here. This is not just verbal acts. Well, Your Honor, I respectfully disagree. Out-of-court assertions offered not for their truth but to explain the actions of an investigating officer. But it was offered for the truth. Carter is a drug dealer. The CI identifies Carter. The CI, an out-of-court person, identifies Webster. Sorry, Webster says that the CI identifies Carter as a drug dealer. That's a statement offered for the truth. The prosecution uses it for the truth. At the end, that's part of the offense that it's with intent to distribute. It's not anything but that. Our position is that this case is very like the case in United States v. Breland. In that case, this court said that the out-of-court assertion testified to by an officer to explain his actions, his decision to approach a specific suspect, was not hearsay because it was not offered for its truth. And we have repeatedly cautioned how subject that is to abuse. Because rarely are the reasons for the officer's actions relevant to a jury trying to decide guilt or innocence for the defendant. We've dealt with that time and again and have said you just can't do this. And we've ruled in favor of habeas petitioners on that basis. I don't see how this isn't hearsay and testimonial hearsay at that. But I guess I also have issues on the prejudice point. Yes. Even if the Court of Appeals unreasonably decided the deficient performance prong, Mr. Carter is not entitled to relief. Because if you set aside the contested out-of-court assertions in Deputy Webster's testimony, the state introduced overwhelming evidence of Mr. Carter's possession with intent to deliver more than 5 grams of cocaine. Based on that evidence, the Court of Appeals reasonably concluded there's no reasonable probability the outcome would have been different. Of course, the more than 5 grams part, which nobody was focused on, is quite problematic, too, since what we have is somebody holding a bag 50 feet away from another person, which is far enough at least would not make me confident if I was looking at 5 grams or 2 grams, and you figure 28 grams is an ounce. That's an amazing degree and implausible to me degree of specificity for that. But I want to just stay for a moment on the other. I mean, this background stuff, as Judge Hamilton points out, has been abused over and over again. Somebody like Deputy Webster can say, you know, I came to the scene because I received information from a dispatcher. That's enough. I mean, you don't have to go into the gory details and squeeze in all this hearsay evidence as part of sort of laying the background. Well, our position is that the reference to being directed to a person involved in distributing controlled substances was very limited testimony, not out of proportion to the limited purpose for which it was offered. But what it was was evidence on the truth about a key element of the case that the state had to prove. Was he possessing with intent to distribute? Wisconsin, like everybody else, punishes simple possession in a different way. In United States v. Breland, this court recognized that an officer can testify to out-of-court assertions to explain his actions during the course of the investigation. But you can't just pick one case and ignore all the other cases in which we have said this is one of the most abused, you know, seemingly available loopholes that's out there and we have overturned convictions on this basis. Yes, and this court has numerous cases have been cited involving direct review by this court. The one case involving AEDPA is Jones v. Basinger. And in that case, the court, which is nothing like the facts of this case, the court said that we look at the state court's finding of purpose, that that is a finding of fact, that in an AEDPA case is entitled to a presumption of correctness unless the petitioner rebuts the presumption. In Jones, which is, to my knowledge, the only case decided by this court under the AEDPA, finding that there was a confrontation clause violation. In that case, the facts were vastly different from the facts in this case. That was a situation where the petitioner had been involved with two other persons in a brutal home invasion and murder of four people. The case went to trial. The state's main witness, apparently, was going to be one of the petitioner's co-actors who had agreed to testify against the petitioner under a very favorable plea agreement with the state. The defense made clear at the outset. Its theory of the defense was that the state's case was paper thin. And the state asked then to admit testimony through the officer of an out-of-court declarant describing in detail the events of the crime, describing who did what. And this out-of-court declarant was someone who apparently had spoken with the other co-actor and gotten his information from the other co-actor, so it was double hearsay. But it was extremely detailed, extremely extensive, offered by the state expressly to rebut the defense theory that the state's evidence linking the defendant to the crime was thin. In other words, the state was almost expressly asking to have it admitted for its truth. And this court concluded that under those egregious circumstances, there was no purpose for the admission of the evidence other than for its truth. And this case is very, very unlike that. We're talking about a very, very limited reference. If you piece together two answers of Deputy Webster to two questions apart from each other in a series of questions by the prosecutor, here I believe that the very limited nature of the assertion was not out of proportion to the legitimate purpose. No, you keep saying out of proportion, and I don't know where the hearsay rule is. As long as it's not out of proportion, you get to use as much hearsay as you want. I mean, that's just not the rule. I think it goes to show how different this case is from Jones v. Basinger, which applies the type of deference to the Confrontation Clause question that is owed in a case under AEDPA. In sum, it is the appellee's position that based on the evidence, and Your Honor has already discussed the evidence, I won't repeat it, that the Court of Appeals reasonably concluded that there is no reasonable probability the outcome would have been different even if the assertions at issue had been objected to and excluded from evidence. The Court in Strickland said, quote, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. That course should be followed here. This Court can easily decide that the Wisconsin Court of Appeals reasonably rejected Mr. Carter's ineffectiveness claim based on a lack of prejudice. On that ground alone, the appellee requests that this Court affirm the judgment of the District Court, denying Mr. Carter's petition. Thank you. Thank you. Anything further, Ms. Cranberry? Two very quick points, Your Honor. First, United States v. Breland. In that case, the testimony was presented in a very vague manner, and there was no argument and closing argument. That is not something that we can consider here. Second, I would just say that prejudice is not as high of a standard as it may seem. Mr. Carter only has to show that there is a reasonable probability of a different outcome in this case. And because the prosecution offered this testimony, and because this testimony was so key in its closing argument, there was a reason that it brought this testimony in, despite the fact that the confidential informant had been excluded from testifying. This Court cannot allow state courts to continue to rely on the course of the investigation exception to allow a non-testifying confidential informant's substantive statements to be offered for their truth at trial. Thanks very much. Thank you. And you are here at the Court's request as well, are you not? We appreciate very much your help to your client and to the Court. So thank you, and thanks as well to the State. We'll take the case under advisement, and the Court will be in recess.